MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 64
Docket:       SJC-26-7
Decided:      July 16, 2026

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, LIPEZ, and TAUB, JJ.
Majority:     CONNORS, LAWRENCE, LIPEZ, and TAUB, JJ.
Statement of Nonconcurrence:  STANFILL, C.J., and MEAD, and DOUGLAS, JJ.


IN RE BALLOT CHALLENGE IN ELECTION OF TOWN OF CLIFTON SELECT
BOARD MEMBER


JUDGMENT OF THE COURT

[¶1]  This matter comes before us on a petition submitted by the Town of Clifton seeking resolution of a challenge by Jeffery F. Niles Jr. to two absentee ballots cast in a Town Select Board election.  With its petition, the Town submitted an affidavit from Niles setting forth the bases for his challenge.  *See* 21-A M.R.S. §§ 673(1), 696(1) (2026).  Because the ballots affect the election result, we have original jurisdiction to determine their validity, and we sit as the trial court.  *See id.*; *In re Ballot Disp. in Election of Town of Winslow Dist. 3 Town Councilor*, 2018 ME 2, ¶ 2, 176 A.3d 1290.  The parties have stipulated to the facts.  After having reviewed the materials submitted, we reject the challenge and conclude that the ballots must be counted.

## I. BACKGROUND

[¶2]  On March 24, 2026, the Town held a municipal election for, among other things, a one-year-term Select Board member.  The candidates for the position were Steve Armenia and Cynthia Grant.  In advance of the election, on March 18, 2026, an immediate family member of two voters applied to the Town Clerk for absentee ballots.  *See* 21-A M.R.S. § 753-A(3) (2026) ("An immediate family member of a voter may also make an application or written request for an absentee ballot for the voter.").  In the section of each application indicating the "Method of Delivery of Ballot to the Voter," the applicant placed a checkmark next to "By Immediate Family Member of Voter" and placed an illegible signature on line 5(c), where the applicant is instructed to designate the family member of the voter.  On the adjacent "Relationship to the Voter" line, the applicant indicated that he was the husband of one voter and the father of the other.  On each application, line 6, which is designated for the signature of the voter or the immediate family member of the voter, was left blank.

[¶3]  The Clerk issued to the applicant an absentee ballot and return envelope for each voter.  As required by statute, the line for the "Voting Residence" on the return envelopes issued with the ballots indicates that it "Must be completed by Clerk."  *See* 21-A M.R.S. § 753-B(1) (2026) ("The clerk

shall type or write in ink the name and the residence address of the voter in the designated section of the return envelope.").  Although the Clerk wrote the name of the voter in ink on each envelope, the Clerk wrote only "Clifton," without any street address, for "Voting Residence."  *See* 21-A M.R.S. § 1(40-B) (2026) ("'Residence address' means the street and number or other designation indicating the physical location of a person's residence.").

[¶4]  The family member to whom the Clerk issued the ballots and envelopes for the two voters was a candidate on the ballot for a separate Select Board position with a three-year term, the result of which is not implicated by the validation or invalidation of the ballots at issue.

[¶5]  The same family member returned the two voters' completed ballots to the Clerk on March 24, 2026.  The Clerk accepted the ballots.  The Town—through a clerical error—did not count the two absentee ballots in determining the results of the election.  The Town announced and certified the results as 114 votes for Grant and 113 votes for Armenia.

[¶6]  The Clerk, who was also the Election Warden presiding at the voting place, *see* 21-A M.R.S. §§ 1(50), 628(1) (2026), discovered the clerical error the morning after the results were announced.  On March 27, 2026, the Town resumed counting ballots to include the two absentee ballots.  A member of the

public who was present stated that he wished to challenge the ballots, and he submitted an affidavit challenging both ballots. *See* 21-A M.R.S. § 673(1) (2026). Acting pursuant to 21-A M.R.S. § 696, which applies if the validity of a challenged ballot affects the election result, the Town submitted to the Executive Clerk of the Supreme Judicial Court materials that included the challenger's affidavit, a "challenge certificate," and the absentee ballots sealed in their original envelopes. *Id.* §§ 673(3), 696(1).

[¶7]  We concluded that the challenger had failed to file "an appropriate affidavit setting forth the factual basis for the voters' ineligibility and the source of the information demonstrating that ineligibility" and dismissed the petition, declining to invalidate the ballots. *See In re Ballot Challenge in Election of Town of Clifton Select Bd. Member*, 2026 ME 42, ¶ 7, 355 A.3d 745.

[¶8]  After we dismissed the matter, the Town resumed counting the ballots. Niles attended the proceeding, and the Town Clerk granted his request to inspect the two absentee ballots previously challenged, the applications for the absentee ballots, and the register of absentee voters. Niles challenged the ballots by submitting a signed affidavit. In his affidavit, Niles contended that the absentee ballots had been impermissibly issued to a candidate whose name appeared on the ballot, *see* 21-A M.R.S. § 753-B(2)(E), upon applications that

were not signed as required by 21-A M.R.S. § 753-A(3)(A)(3). Niles signed a challenge certificate under oath. *See id.* § 673(1). The challenge certificate and ballots were marked with unique identifying numbers, after which the challenge certificate and affidavit were placed in an envelope and sealed, with the unique ballot identifying numbers noted on the sealed envelope. *See id.* §§ 673(3), 696(1).

[¶9] The Town proceeded with opening and counting the challenged ballots. Both ballots were cast in favor of Armenia, resulting in a total of 115 votes for him and 114 votes for Grant. Because the two challenged ballots changed the outcome of the election, the Clerk/Warden suspended certification of the election and on May 8, 2026, delivered to us the envelope containing the challenge certificate and the signed affidavit, together with other election materials that are not in dispute.

[¶10] The Town, Niles, and Grant[1] stipulated to the facts and submitted legal memoranda, waiving oral argument. We now issue our judgment.

## II. DISCUSSION

[¶11] "A voter of a municipality . . . may challenge the right of another to vote at an election in that municipality." *Id.* § 673; *see also* 21-A M.R.S. § 757

---

[1] Armenia has not participated in these proceedings.

6

(2026) ("An absentee ballot may be challenged the same as a regular ballot under section 673."). The grounds upon which a ballot may be challenged are set forth in 21-A M.R.S. § 673(1)(A). To bring a challenge, the challenger must submit an affidavit setting forth "the reason the particular individual being challenged may be ineligible to vote, the specific source of the information or personal knowledge upon which the challenge of the particular individual is based and a statement that the challenger understands that making a false statement on the affidavit is punishable under penalties of perjury." 21-A M.R.S. § 673(1).

[¶12] Citing section 673(1)(A)(5), Niles's affidavit challenges the two absentee ballots on the grounds that the voters did not properly apply for them. Specifically, he alleges that the applications were improper because the family member who submitted them was a candidate and because the applications were not signed. *See id.* §§ 753-A(3)(A)(3), 753-B(2)(E). In the legal memorandum that Niles submitted to this Court, he challenges the ballots on the additional ground that pursuant to 21-A M.R.S. § 762(1) (2026), the Clerk should not have accepted them because the return envelopes did not contain the voters' full addresses.

## A.      Challenge Based on Application for Ballots by a Candidate

[¶13]  When statutory text is clear and constitutional, we are obliged to obey it.  *See Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 15, 895 A.2d 965 ("The cardinal rule of statutory construction is that when the words of the Legislature are clear, they are to be given their plain meaning and further judicial interpretation is not necessary." (quotation marks omitted)).  The Legislature has limited the grounds upon which ballots may be challenged.  Section 673(1)(A) states:  "*Only* the following reasons for challenges may be accepted by the warden."  (Emphasis added).  A list of reasons follows, and all of them are things that the *voter*—the challenged person—did wrong, such as not properly registering to vote, failing to return an absentee ballot in time, or being ineligible to vote because of the voter's age, citizenship, or residency.  21-A M.R.S. § 673(1)(A)(3), (4), (9).  As relevant here, a ballot can be challenged if the voter "[d]id not properly apply for an absentee ballot."  *Id.* § 673(1)(A)(5).[2]

[¶14]  Niles alleges that it was improper for a candidate to apply for the absentee ballots because section 753-B(2)(E) prohibits a clerk from issuing an

---

[2]  In full, the grounds for challenging a ballot are that the voter

(2)  Is not enrolled in the proper party, if voting in a primary election;
(3)  Is not qualified to be a registered voter because the challenged person:

8

absentee ballot "[t]o any candidate, except for the candidate's own ballot." This allegation fails as a basis to challenge the ballots because for section 673(1)(A)(5) to apply, it must be the *voter* who did not properly apply for the absentee ballot. Section 673(1)(A)(5) plainly states that an absentee ballot may be challenged only when the voter did not properly apply. If the Legislature had intended for an improper application by someone other than a voter to be a basis for challenging an absentee ballot, "it could have included specific language to that effect." *Damon v. S.D. Warren Co.*, 2010 ME 24, ¶ 14, 990 A.2d 1028.

---

(a) Does not meet the age requirements as specified in section 111, subsection 2 and section 111 -A;
(b) Is not a citizen of the United States; or
(c) Is not a resident of the municipality or appropriate electoral district within the municipality;
(4) Registered to vote during the closed period or on election day and did not provide satisfactory proof of identity and residency to the registrar pursuant to section 121, subsection 1-A, except that only an election official may challenge for this reason;
(5) Did not properly apply for an absentee ballot;
(6) Did not properly complete the affidavit on the absentee return envelope;
(7) Did not cast the ballot or complete the affidavit before the appropriate witness;
(8) Communicated with someone as prohibited by section 754-A, subsection 1, paragraph B or subsection 3, paragraph B or D;
(9) Did not have the ballot returned to the clerk by the time prescribed;
(10) Voted using the name of another;
(11) Committed any other specified violation of this Title; or
(12) Voted using the wrong ballot for the appropriate electoral district or political party, if applicable.

21-A M.R.S. § 673(1)(A). (There is no reason number (1) in section 673(1)(A).)

[¶15]  Our conclusion that section 673(1)(A)(5) permits a challenge only when it is the voter who improperly applied for an absentee ballot is consistent with legislative intent.  *See, e.g.*, *State v. Beaulieu*, 2025 ME 4, ¶ 14, 331 A.3d 280; *Daniels v. Tew Mac Aero Servs., Inc.*, 675 A.2d 984, 987 (Me. 1996) ("[W]e remain mindful of the whole statutory scheme, of which the section at issue forms a part, so that a harmonious result may be achieved.").  Maine's election laws reflect two legislative objectives: protecting the integrity of elections and at the same time not unnecessarily disenfranchising voters by invalidating their ballots.

> The object of elections is to ascertain the popular will, and not to thwart it.  The object of election laws is to secure the rights of duly qualified voters, and not to defeat them.  This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not, by technical obstructions, to make the right of voting insecure.

*Op. of the Justs.*, 152 Me. 219, 226-27, 130 A.2d 526, 530 (1956) (quotation marks omitted).

[¶16]  In *Marden v. City of Waterville*, we addressed the failure of a city clerk to deliver absentee ballots for counting.  226 A.2d 369, 369-70 (Me. 1967).  Although our decision rests on other grounds, we quoted with approval an opinion of the Indiana Supreme Court:

> Any qualified absent voter who returns his ballot to the (circuit court) clerk's office in time for it to be delivered to the voting place in the precinct before the polls are closed on election day, and has satisfied all the statutory requirements with which he must comply, is entitled to have his vote counted, and if because of the failure of the county clerk or any other election official to do his duty, such ballot is not delivered to the inspector of the precinct in time for it to be counted by the precinct election board it will be counted by the court in an election contest proceeding.

*Id*. at 370 (quoting *Brown v. Grzeskowiak*, 101 N.E.2d 639, 654 (Ind. 1951)).  As we said in *Opinion of the Justices*, 152 Me. at 225, 130 A.2d at 529, "[w]e distinguish between acts of the voter and acts of the election officials."

[¶17]  Maine's election laws reflect this distinction.  While various laws protect the integrity of elections by regulating the conduct of election officials, candidates, and others, section 673(1)(A) allows ballots to be challenged only when it is the *voter* who acted improperly.  This helps ensure that improper conduct by third persons will not disenfranchise voters by invalidating ballots they cast in expectation that they were doing so properly.  This further supports our conclusion that section 673(1)(A)(5) allows for a challenge only when it was the voter who did not properly apply for an absentee ballot.[3]

---

[3]  Niles argues that the immediate family member was an agent of the voters and that his acts should therefore be imputed to the voters.  He provides no legal support for this argument, which is both contrary to the plain language of section 673(1)(A) and is inconsistent with the objective of avoiding disenfranchising voters based on conduct of third parties.  We accordingly reject this argument.

[¶18]  Even if we were to extend the grounds for challenging absentee ballots to a third person's improper application, the candidate's application here was not improper.  Section 753-B(2)(E) prohibits clerks from issuing ballots to candidates, except for the candidates' own ballots.  Title 21-A M.R.S. § 791(3)(B) (2026) makes it a crime for a candidate to "deliver[], receive[], accept[], notarize[], assist[] or witness[] an absentee ballot, other than the candidate's own absentee ballot."  These statutes prevent candidates from assisting in the voting process, witnessing, or notarizing absentee ballots and handling completed absentee ballots.  Neither statute prevents candidates from *applying* for them.  Moreover, section 753-A(3), the statute that authorizes immediate family members to apply for absentee ballots for voters, makes no exception for family members who are also candidates.  Taken together, these statutes allow a candidate to apply for an absentee ballot on behalf of a family member, so long as the candidate does not participate in the absentee ballot voting process or subsequently handle the ballot.  Instead, the clerk would need to issue the ballot by mail or in person to the voter or to an immediate family member or designated third person (unless the person is among those expressly excluded, such as candidates).  21-A M.R.S. § 753-B(1), (2).  Here, it was the delivery of the ballots (not the application) that was improper.  And

12

improper delivery of absentee ballots is not among the grounds for challenging ballots. *Id.* § 673(1)(A). We therefore reject Niles's challenge based on the candidate's application for the ballots.

**B. Challenge Based on Lack of Signature on Applications**

[¶19] In his affidavit, Niles also challenges the absentee ballots on the ground that the applications are unsigned. An application or written request for an absentee ballot must

> contain[] . . . [t]he signature of the voter or the voter's immediate family member who is making the application or written request. If an immediate family member is either making the application or written request or is designated in the application or written request to deliver or return the ballot to the voter, then the family relationship to the voter must also be provided.

*Id.* § 753-A(3)(A)(3).

[¶20] Each of the applications for the challenged absentee ballots includes the signature of the immediate family member making the application and the relationship between that person and the voter. The family member signed on the wrong line—while he should have signed the application on line 6, he signed it on line 5(c), where he should have printed his name. Nonetheless, the application "contains" his signature as required by section

753-A(3)(A)(3), and Niles appears to concede as much.[4] We thus find that there is no merit to Niles's claim that the applications were invalid for lack of signatures.[5]

## C.   Challenge Based on Lack of Addresses on Return Envelopes

[¶21]   In his memorandum, Niles challenges the ballots on the ground that the return envelopes did not include the voters' residence addresses.  To be accepted, "[t]he voter's name and residence address typed or written in ink by the clerk" must appear "in the designated section of the return envelope." 21-A M.R.S. § 762(1).  "Residence address" is defined as "the street and number or other designation indicating the physical location of a person's residence." *Id.* § 1(40-B).  Here, the Clerk wrote only "Clifton" on the return envelopes without any street addresses.  Niles argues that therefore the Clerk should not have accepted the two ballots.

---

[4] While there is no legible designation of the family member's name on the applications, Niles does not dispute the identity of the person who signed them, nor did his affidavit raise this as a ground for his challenge.

[5] Citing 21-A M.R.S. § 756(2) (2026), Niles argues that the ballots are defective because the signatures on the return envelopes (which were the voters' signatures) did not match the signatures on the applications (which were the family member's).  Section 756(2) states: "[t]he clerk shall compare the signature of the voter on the application, *when required*, with that on the corresponding return envelope."  (Emphasis added).  Here, though, the voters were not required to sign the applications.  21-A M.R.S. § 753-A(3)(A)(3) (stating that an application for an absentee ballot must contain "[t]he signature of the voter *or* the voter's immediate family member who is making the application or written request."  (Emphasis added)).

[¶22]  We do not reach this challenge to the ballots because Niles did not assert it in his affidavit.  The Legislature set forth, in detail, the information that must be included in a challenge affidavit, including the specific reason for the challenge, the source of information on which the challenge is based, and "a statement that the challenger understands that making a false statement on the affidavit is punishable under penalties of perjury."  *Id.* § 673(1).  A challenger who later argues a basis for his challenge that is not set forth in his affidavit has not sworn to that basis.  Niles had an opportunity to review the return envelopes before he swore out his affidavit, but he did not assert that defects in the return addresses were a basis for his challenge to the ballots.  While we do not reach this issue because Niles did not raise it in his affidavit, we note that a defect in the address on a return envelope is not a ground enumerated in section 673(1)(A) to challenge a ballot.

[¶23]  Accordingly, it is ORDERED that the two challenged ballots must be counted, and the Town shall certify the election result with the two ballots counted.

Dated:	July 16, 2026


_____/s/_____
CATHERINE R. CONNORS
Associate Justice

_____/s/_____
RICK E. LAWRENCE
Associate Justice


_____/s/_____
JULIA M. LIPEZ
Associate Justice


_____/s/_____
CHRISTOPHER C. TAUB
Associate Justice


_____


STATEMENT OF NONCONCURRENCE

STANFILL, C.J., with whom MEAD, and DOUGLAS, JJ., join

[¶24]  Because I believe that the two challenged voters did not properly apply for or return the absentee ballots and thus the two challenged ballots may not be counted, I respectfully decline to concur in the Court's judgment.

[¶25]  A voter may challenge the right of another to vote at an election in that municipality on the ground that the challenged voter "[d]id not properly apply for an absentee ballot" or "[c]ommitted any other specified violation of this Title."  21-A M.R.S. § 673(1)(A)(5), (11) (2026).  Here, the family member who signed the applications for absentee ballots for the voters was a candidate for a three-year term on the Select Board in the same March election on the

16

same ballot as the race at issue here. The Clerk was expressly prohibited from issuing the absentee ballots to that candidate. 21-A M.R.S. § 753-B(2)(E) (2026) ("The clerk *may not issue* an absentee ballot . . . [t]o *any candidate*, except for the candidate's own ballot." (emphasis added)). Indeed, the ballot is arguably void for that reason. *See* 21-A M.R.S. § 7 (2026) ("When used in this Title [21-A], the term 'may not' indicates a lack of authority or permission to act or refrain from acting in the manner specified by the context.").

[¶26] I agree with the majority, however, that the question presented by section 673(1)(A) is whether the *voters* did not properly apply for the absentee ballots or committed any other violation of the election statutes. The Court concludes that the voters did properly apply for absentee ballots and did not otherwise violate the election statutes, but I disagree.

[¶27] Maine voters may "*designate* an immediate family member or a 3rd person to deliver the [absentee] ballot *on the voter's behalf*. An immediate family member of a voter may also make an application or written request for an absentee ballot *for the voter*." 21-A M.R.S. § 753-A(3) (2026) (emphasis added).[6] Here, the candidate who was an immediate family member of the

---

[6] Under section 753-A(3), the absentee voters need not designate an immediate family member to *apply* for their absentee ballots, but they must designate the person who will *deliver* their ballots back to the Clerk on their behalf.

voters requested and applied for the challenged absentee ballots, and he also delivered them on Election Day. His actions on behalf of the voters were improper in several respects.

[¶28] First, this was an improper application for the absentee ballots. A candidate who "delivers, receives, accepts, notarizes, assists or witnesses an absentee ballot, other than the candidate's own absentee ballot," may commit a Class C crime. 21-A M.R.S. § 791(3)(B) (2026). Here, the candidate received and accepted the two absentee ballots, and he did so by submitting applications in writing "for the voter[s]" under section 753-A(3); *see id.* § 673(1)(A)(5).

[¶29] Second, the candidate delivered the absentee ballots on Election Day, and he did so "on the voter[s'] behalf." *Id.* § 753-A(3). Delivering the absentee ballots may also be a criminal offense. *Id.* §§ 673(1)(A)(11), 791(3)(B).

[¶30] Finally, neither absentee voter actually designated anyone to deliver the absentee ballot to the Clerk on the voter's behalf, in further violation of section 753-A(3). *See id.* § 673(1)(A)(5), (11).

[¶31] I agree with the Court that when the statutory language is clear, we obey it. *See Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 15, 895 A.2d 965. I am somewhat mystified, however, by the conclusion that the

absentee ballots here cannot be challenged because it was not the voters themselves who submitted the applications. The first two violations are attributed to the voters by the plain language of section 753-A(3) because the candidate acted "for the voter" and "on the voter's behalf." The third violation, the failure of the voters to designate an immediate family member or other third person to deliver the absentee ballots to the Clerk, is a direct violation by the voters themselves of section 753-A(3).

[¶32] These statutes were enacted to prevent fraud, with the criminal statute, section 791(3), enacted in response to ballot tampering and section 753-B(2)(E) enacted to draw municipal clerks' attention to the prohibition on candidates handling other voters' ballots. *See* L.D. 1477, Statement of Fact (116th Legis. 1993) (indicating a purpose to implement the recommendations of the Special Commission to Review the Electoral Process); Special Commission to Review the Electoral Process, Report to the Secretary of State 13, 21 (Mar. 23, 1993) (referencing recent ballot tampering and stating that the purpose in enacting section 791(3)(B) was to "limit opportunities for fraud and abuse by tightening up several additional aspects of absentee balloting" because "security would better be served by restricting the ability of third parties to deliver and return absentee ballots"); Office of Policy & Legal

Analysis, Summary of L.D. 1363, at 6 (130th Legis. 2021) (noting that the enactment of section 753-B(2)(E) was "consistent with existing 21-[A] M.R.S. § 791(3)(B), which establishes that a candidate commits a Class C crime if that candidate delivers, receives or accepts any ballot other than the candidate's own absentee ballot"); Testimony of Julie L. Flynn, Deputy Secretary of State on L.D. 1363 (130th Legis. 2021) (indicating that the legislation "adds an explicit restriction on issuing an absentee ballot to a candidate unless it is the candidate's own ballot" and noting that "section 791, subsection 3(B)—the violations and penalties section—already makes it a Class C crime for a candidate to deliver, receive, accept, notarize, assist or witness an absentee ballot that is not the candidate's own ballot. We believe that adding the restriction in the ballot issuance section of the law makes the requirement more transparent for candidates and election officials.").

[¶33] Under the statutory language listing the grounds upon which the votes may be challenged, each voter "[d]id not properly apply for an absentee ballot." 21-A M.R.S. § 673(1)(A)(5). The candidate was legally prohibited from receiving or accepting the absentee ballots or indeed from assisting at all. *See id.* § 791(3)(B). When he nonetheless did so, in the language of section 753-A(3), he was acting "for the voter[s]," and therefore they did not properly

apply for their absentee ballots, *see id.* § 673(1)(A)(5). The candidate was also prohibited from delivering the absentee ballots to the Clerk on Election Day. *See id.* § 791(3)(B). Again quoting the statute, he did so "on the voter[s'] behalf," *see id.* § 753-A(3), and therefore the voters committed another violation of Title 21-A, *see id.* § 673(1)(A)(11). The voters failed to designate any person to deliver the absentee ballots to the Clerk, also in violation of Title 21-A. *See id.* §§ 673(1)(A)(11), 753-A(3).

[¶34] While the failure of the voters to designate an immediate family member or other third person to deliver the absentee ballots to the Clerk may be an immaterial irregularity standing alone, *see* 21-A M.R.S. § 762 (2026), the combination of these violations strikes at the very heart of the statutory scheme regulating absentee ballots to prevent fraud. The challenged voters themselves were indeed absent from the entire process apart from their signatures on the envelopes. They did not execute the applications, they did not designate anyone to apply for them, they did not designate anyone to return their ballots for them, they did not return their ballots themselves, and everything was handled by a candidate for office who was prohibited from doing so. The legislative efforts to "limit opportunities for fraud and abuse," Special Commission to Review the Electoral Process, Report to the Secretary of State

13 (Mar. 23, 1993), were bypassed. Although there may not be any actual fraud here, there were multiple serious violations of the statutes governing absentee ballots.

[¶35] There is apparently room for disagreement in interpreting the statutory scheme, and so I urge the Legislature to clarify the grounds upon which an absentee ballot will not count. I agree that we should not lightly disenfranchise any voter. In my view, however, based upon a plain reading of the statutes, the two challenged voters have not "satisfied all the statutory requirements with which [they] must comply," and they are not "entitled to have [their] vote[s] counted." *Marden v. City of Waterville*, 226 A.2d 369, 370 (Me. 1967) (quotation marks omitted). Because I believe the challenged absentee ballots are invalid and must not be counted, I do not concur in the judgment.

Dated July 16, 2026

_____/s/_____
VALERIE STANFILL
Chief Justice


_____/s/_____
ANDREW M. MEAD
Associate Justice

                                            /s/

WAYNE R. DOUGLAS
Associate Justice

---

Jeffery F. Niles, Jr., pro se

Stephen W. Wagner, Esq., Rudman Winchell, Bangor, for the Town of Clifton

Cynthia Grant, pro se

Steve Armenia did not file a memorandum